## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TALBOT (TODD) SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:13-cv-05101-MMB |
| | : | |
| UNILIFE CORPORATION, UNILIFE | : | |
| MEDICAL SOLUTIONS, INC., ALAN | : | |
| SHORTALL, and RAMIN MOJDEH, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR EMERGENCY MOTION TO COMPEL PRODUCTION, PRESERVATION, AND FORENSIC IMAGING OF ILLEGALLY OBTAINED EVIDENCE

Defendants Unilife Corporation, Unilife Medical Solutions, Inc., Alan Shortall, and Ramin Mojdeh ("Mojdeh") (collectively "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of their Emergency Motion to Compel Production, Preservation, and Forensic Imaging of Illegally Obtained Evidence.

## I.    INTRODUCTION

The Pennsylvania Wiretapping Act prohibits the use of any electronic, mechanical or other device to record a private conversation surreptitiously without the consent of all parties to the conversation.    Plaintiff Todd Smith used the voice memo feature of his iPhone to surreptitiously record a conversation with Defendant CFO Mojdeh, without Mr. Mojdeh's consent; then Plaintiff violated the Act again by copying the illegal recording on to his computer. In response to this Motion, Plaintiff has wisely conceded his obligation to preserve physical

images of his iPhone and computer—thereby avoiding adding evidence spoliation to his criminal misconduct in violating the Wiretapping Act.

Therefore, the only issue that warrants a reply is Plaintiff's argument that because the recording device he used to secretly tape a private conversation happened to be on his iPhone, his secret recording falls within an exception to the Wiretapping Act that allows a party to *listen in on* a phone conversation using a telephone extension. This frivolous argument may be quickly dispatched. The Act's text and interpretive case law unambiguously refute Plaintiffs' "creative" reading of the Act, and his reading is an absurd proposed exception that would swallow the Act's paramount rule that secret recordings are illegal.

## II.    PLAINTIFF'S RECENT CONCESSIONS

Since Defendants submitted their Opening Brief, Plaintiff has agreed to take several steps that moot some of the relief requested, including:

- Plaintiff's counsel confirmed that technology vendor Maragell has created a physical[1] image of Plaintiff's computer and is preserving it. See Email Chain between Virginia Hardwick and Shannon McClure, attached hereto as Exhibit A.

- Plaintiff's counsel confirmed that Maragell created a logical[2] image of Plaintiff's iPhone, but did not create a physical image of the iPhone. Maragell is preserving the logical iPhone image. See id.

- Plaintiff's counsel confirmed that Maragell advised her that the problems Maragell encountered in creating the logical image of Plaintiff's iPhone did not damage any

---

[1]  A "physical" image is an image of the entire device, including active system files and all *free and unallocated* space. A physical image is more complete than a logical image.

[2]  A "logical" image is an image of the *active* system files on a computer or device.

metadata associated with the recording. <u>See</u> Email from Virginia Hardwick to Carolyn Short, attached hereto as Exhibit B.

- The parties have agreed that Maragell will create a physical image of the iPhone on June 13, 2014, and Defendants will bear the approximately $1500 cost for this additional image. <u>See</u> Email from Virginia Hardwick to Carolyn Short, attached hereto as Exhibit C.

Thus, the preservation and forensic imaging issues raised in Defendants' Opening Brief have been, or are in the process of being, addressed.

The critical point that remains outstanding is Defendants' request that Plaintiff produce the images to Defendants for purposes of identifying the various copies of the illegal recording Plaintiff made on or about June 21, 2012. Plaintiff resists the production on the ground that his secret recording supposedly was not illegal.

## III.   <u>ARGUMENT</u>

Plaintiff argues that because he secretly recorded his private conversation with Mr. Mojdeh by using a recording device that was located on a hand-held mini-computer that also contained, among many other things, a cellphone, his recording falls within the extension telephone exception to the Wiretapping Act. By its terms, however, that exception applies only when one uses a phone *as a phone*, and not when one uses a recording device that is located on a handheld device that also contains a phone. Were the rule otherwise, rampant invasions of privacy of the exact sort that the Wiretapping Act prohibits could be perpetrated merely by using an iPhone.

### A.   <u>The Extension Telephone Exception Applies When One Uses A Phone As A Phone, And Does Not Apply When One Uses A Recording Device Attached To A Phone</u>

Although Plaintiff ignores it, the Act's text controls. The Act bans interception of a "wire, electronic or oral communication," 18 Pa.C.S. §§ 5703, 5721.1, and defines

"intercept[ion]" as the "acquisition of the contents of [such] communication *through the use* of any electronic, mechanical, or other device." *Id.* § 5702 (emphasis added).  The Act defines "electronic, mechanical or other device" and states a telephone extension exception as follows:

> "Electronic, mechanical or other device." *Any* device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, *that can be used to intercept a wire, electronic or oral communication* other than:

> (1) Any telephone or telegraph instrument, equipment or facility, or any component thereof, furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business, or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business, or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

18 Pa.C.S. § 5702 (emphasis added).

The recording device that Plaintiff used to surreptitiously record a private conversation is a "device or apparatus . . . that can be used to intercept a communication," and he acquired the communication "*through the use of*" that recording device.  He thus violated the Act.

That the recording device was located on a hand-held computer that also contained a cellphone is irrelevant *because Plaintiff did not use his cellphone's telephone service to intercept the conversation*—he used the "voice memo" application.  The Act's phrase "through the use of" makes clear that one must look *at which function was used* to intercept the communication to decide whether the telephone extension exception applies.

This point appears in the very case on which Plaintiff relies, <u>Commonwealth v. Spence</u>, No. 33 MAP 2013, 2014 WL 1669795 (Pa. Apr. 28, 2014).  In <u>Spence</u>, the Pennsylvania Supreme Court considered the admissibility of evidence obtained when a State Trooper listened in on a phone call placed via speaker phone by an arrestee to his drug dealer. <u>Id.</u> at *1.  The call was placed in order to inculpate the drug dealer, who did not know that the call was on speaker

or that there was a State Trooper present. Id. The drug dealer was arrested and charged; during trial he filed a motion to suppress the evidence derived from the phone call. Id. The Supreme Court's holding was narrow: "[W]e hold that a state trooper does not violate the Wiretap Act *when he listens through the speaker phone* on an informant's cellular telephone as the informant arranges a drug deal." Id. at *3 (emphasis added).

Thus, as the Act's "though the use of" text specifies, Spence found the telephone extension exception applied because the Trooper intercepted the conversation *by using a telephone service* provided in the ordinary course of business by a phone service provider.

Here, by contrast, Smith secretly recorded a private, in-person conversation. He did not do so "through the use of" his cellphone service but instead did so "through the use of" the "voice memo" application, which is the modern equivalent of a tape recorder or Dictaphone.

Although the Court need go no further, we note that other jurisdictions interpreting similar wiretapping laws routinely reject the notion that recording devices attached to phones come within the telephone extension exception, and likewise consistently focus on whether the interception was accomplished *through the use of* the telephone service or an ancillary device.

Federal wiretapping law has a definition and telephone extension exception that is nearly identical to Pennsylvania's § 5702:

> (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--
>
> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

18 U.S.C. § 2510(5).  Likewise, many states have wiretapping statutes modeled from federal law that are very similar to Pennsylvania law and include this exception.  See, e.g., Pascale v. Carolina Freight Carriers Corp., 898 F. Supp. 276, 281 (D.N.J. 1995) ("The New Jersey Electronic Surveillance Act . . . was enacted in 1969 and largely followed the federal statute."). The exception contained in 18 U.S.C. § 2510(5) and 18 Pa. C.S.A. § 5702 is generally referred to as the "extension telephone exception, the business extension exemption, or the business use exception."  See, e.g., T.B. Proprietary Corp. v. Sposato Builders, Inc., No. Civ. A. 94-6745, 1996 WL 290036, at *3 (E.D. Pa. May 31, 1996).

In Pascale, 898 F. Supp. 276, the District of New Jersey analyzed whether the telephone extension application applied to the defendants' use of Radio Shack recording devices attached to the business's telephone busboard.[3] The Court held the Radio Shack recording devices were what had intercepted the calls, those devices were not "telephone equipment," and the mere fact that those devices were physically attached to the telephone-company-supplied busboard did not establish the applicability of the extension telephone exception.  Id. at 279-81.  The Pascale court explained, "[t]here is no suggestion that these instruments had a positive impact on efficiency, clarity, cost, or any other factor by which one would measure the effects on a communications system. Indeed, *tape recorders are used in a myriad of ways wholly unrelated to telephonic communications.*"  Id. at 281 (emph. added).

Likewise, in Sanders v. Robert Bosch Corp., 38 F.3d 736 (4th Cir. 1994), the Fourth Circuit held that a "voice logger"—an "eight-channel reel-to-reel tape recorder"—that was connected to telephone lines did not fall within the exception.  Id. at 738, 740.  The court ruled

---

[3]   "A busboard is a personal distribution center for all the phone extensions for the system. It is supplied by the telephone company and distributes the calls throughout the building to each extension." Id. at 277.

that it "could not characterize the voice logger as a 'telephone or telegraph instrument'" because the "voice logger in no way furthers the plant's communication system." Id. at 740.  Similarly in Deal v. Spears, 980 F.2d 1153, 1158-59 (8th Cir. 1992), the Eight Circuit held that a recording device installed by the defendants, and not the phone itself, was the device that intercepted the calls, such that the extension telephone exception did not apply.

Finally, in Carothers v. Carothers, 977 S.W.2d 287, 289-90 (Mo. Ct. App. 1998), the Missouri Court of Appeals held an answering machine was not a "component" of telephone equipment under that state's similar wiretapping law:

> "Component" is defined as 'a constituent part.' Merriam-Webster's Collegiate Dictionary 235 (10th ed.1994). 'Constituent' is defined as 'an essential part.' Therefore, in order for the answering machine to qualify as a telephone component, it would need to be an essential part of that telephone. The facts as pleaded indicate that the voice activated recorder was a separate electronic device which was not essential to the operation of the telephone. Accordingly, the recorder was not a 'component' of the telephone and qualifies as an 'electronic, mechanical, or other device' under § 542.400(5).

Id. at 290 (citations omitted).

Here, the "voice memo" application is not an essential part of the phone service, has nothing to do with the efficiency, clarity, or cost of a communication system, and in fact cannot be used while the telephone feature of an iPhone is used to place or receive a telephone call.  The voice memo application is not "telephone equipment," so the extension telephone exception to the Wiretapping Act does not apply.

Lastly, as if the text and case law were not enough, we note the sheer absurdity of Plaintiff's argument.  The extension telephone exception was added to the Pennsylvania Wiretapping Act in 1988—long before the existence smartphones that contain all manner of functions in addition to telephone service.  See 1988 Pa. Legis. Serv. 1988-115 (West) (amending 18 Pa. C.S.A. § 5702).  It would be absurd to conclude that merely because a

recording apparatus now may be found on a hand-held device that also contains cellphone service that one may use the recording apparatus to secretly record private conversations. There is no functional difference between Smith recording the conversation via the "voice memo" feature and his secretly placing a tape recorder in his pocket or briefcase. Such a surreptitious recording was precisely what the Legislature barred, and Plaintiff's proposed reading of the telephone exception would swallow the Act's prohibitions entirely. The Legislature wisely foreclosed that absurd construction in the Act's text by (1) defining the prohibited recording devices broadly to include "any" device that is capable of recording, and (2) using the phrase "through the use of" in the Act to specify that it is the function that is used to accomplish the interception that counts.

Here, because Plaintiff used the "voice memo" application, and did not use his cellphone service, to secretly record the conversation, he violated the Act. His attempt on this Motion to rewrite the Act to avoid producing the evidence of his crimes fails.

**B.** **Plaintiff's Reliance On A Purported "Privilege" Concern To Defeat Defendants' Right Of Access To The Illegal Recording Is Nonsensical**

Finally, Defendants disagree that any additional briefing is required for the resolution of Defendants' Motion and disagree that Plaintiff or his attorneys should be able to listen to the illegal recording prior to production, or indeed, at all. As Defendants explained in their moving papers, Plaintiff's claim that production of the illegal recording will risk exposing Plaintiff's attorney-client privileged material is disingenuous and wrong. There is no risk that the illegal recording itself could contain any content protected by *Plaintiff's* attorney-client privilege. At the time of the recording, Plaintiff was employed at Unilife, and the conversation was between Plaintiff and Mr. Mojdeh, another Unilife employee. Thus, any existing privilege would belong to Unilife, and not Plaintiff.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, and in Defendants' Memorandum of Law in Support of Defendants' Emergency Motion to Compel Production, Preservation, and Forensic Imaging of Illegally Obtained Evidence, Defendants respectfully request that this Court enter the form of Order granting this Emergency Motion, and for such other further and additional relief as the Court deems fit or necessary.

Respectfully submitted,

*s/ Carolyn P. Short*
Carolyn P. Short (Pa. I.D. # 38199)
Shannon E. McClure (Pa. I.D. # 164502)
cshort@reedsmith.com
smcclure@reedsmith.com
REED SMITH LLP
Three Logan Square, Suite 3100
Philadelphia, PA 19103
Telephone:  (215) 851-8100
Facsimile:  (215) 851-1420

Christopher J. Moran (Pa. I.D. #68142)
Jamie N. Rotteveel (Pa. I.D. # 307460)
William A. Liess (Pa. I.D. # 205702)
moranc@pepperlaw.com
rotteveelj@pepperlaw.com
liessw@pepperlaw.com
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania  19103-2799
Telephone:  (215) 981-4000
Facsimile:  (215) 981-4750

*Attorneys for Defendants Unilife Corporation,*
*Unilife Medical Solutions, Inc., Alan Shortall, and*
*Ramin Mojdeh*

Date: June 12, 2014

## CERTIFICATE OF SERVICE

I, Shannon E. McClure, hereby certify that on June 12, 2014, I caused a true and correct copy of Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel Production, Preservation, and Forensic Imaging of Illegally Obtained Evidence to be served via the Court's electronic filing system upon the following:

> Virginia Hardwick, Esq.
> Hardwick Collier, LLC
> 179 North Broad Street
> Doylestown, PA 18901
> vhardwick@hardwickcollier.com
> *Attorney for Plaintiff*

> *s/ Shannon E. McClure*
> Shannon E. McClure

# EXHIBIT A

| | |
|---|---|
| **From:** | McClure, Shannon E. |
| **Sent:** | Sunday, June 08, 2014 3:49 PM |
| **To:** | Virginia Hardwick (vhardwick@hardwickbenfer.com) |
| **Cc:** | Short, Carolyn P.; Tiffanie Benfer (tbenfer@hardwickbenfer.com) |
| **Subject:** | RE: price for imaging of cell phone |

Ginger:

We are agreed that you will have your vendor Maragell create a "complete physical image" of the cell phone, and that defendants will pay the cost (not to exceed $1500). Per our discussion, you explained that complete physical images capture all active system files, as well as all unallocated/free space on devices. Please confirm that this complete physical image will be created by Maragell on Monday June 9.

We did not previously understand that Maragell had already created a "complete physical image" of the computer. We are pleased that you did so, so that we can move past these critical preservation issues and towards production.

As for the thumb drive, the first we heard of the thumb drive was in an email that you sent Friday June 6 at 2:30 pm, in the context of discussions surrounding preservation of the recording. Naturally, then, we initially understood that the thumb drive related to the recording in some way. You have since said and we now understand, however, that you had a complete physical image of this thumb drive created for purposes of responding to other document requests, and that you do not believe the thumb drive contains any version of the recording. We assume, then, that you will have no hesitation in directing Maragell to produce a copy of the entire thumb drive complete physical image to us on Monday June 9. Please confirm.

Finally, while we are pleased that the preservation efforts regarding the recording appear to now be progressing towards a resolution (pending completion of the tasks noted above), this does not address the also-urgent issue of the production of the recording to us. We trust you have now had time to review our emergency motion filed Thursday. Please advise if you can now agree to produce the recording to us promptly, and agree that you and your client will not have any access to it.

Thank you.

**Shannon McClure Roberts**
**Partner, Commercial Litigation**
ReedSmithLLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
o: 215.851.8226 | c: 267.342.1243 | f: 215.851.1420
smcclure@reedsmith.com | www.reedsmith.com
NOTE NEW ADDRESS
U.S.: New York, Chicago, Los Angeles, Washington DC, San Francisco, Pittsburgh, Houston, Princeton, Northern Virginia, Wilmington, Silicon Valley, Century City, Richmond
Asia: Hong Kong, Beijing, Shanghai, Singapore, Kazakhstan
Europe: London, Paris, Munich, Greece
Middle East: Abu Dhabi, Dubai

-----Original Message-----
**From:** Virginia Hardwick [vhardwick@hardwickbenfer.com]
**Sent:** Saturday, June 07, 2014 06:58 PM Eastern Standard Time
**To:** McClure, Shannon E.; Short, Carolyn P.
**Cc:** Tiffanie Benfer
**Subject:** Re: price for imaging of cell phone

Carolyn and Shannon,

Are we agreed to have the physical image of the cell phone completed by Maragell at a cost of $1500 to be paid by defendants?

Ginger


Virginia L. Hardwick, Esq.

***Please note that our firm name and my email address have recently changed.***

Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA  18901
Office:  (215) 230-1912
Fax: (215) 230-1913
Cell: (267) 614-6739
www.hardwickbenfer.com


Email communications do not alone form an attorney client relationship.  An attorney client relationship is formed only by mutual agreement with the signing of a written retainer agreement.

This email may contain privileged or confidential communications. If it has been received in error, please return to the sender and delete.

**From:** Virginia Hardwick <vhardwick@hardwickbenfer.com>
**Date:** Friday, June 6, 2014 4:26 PM
**To:** "McClure, Shannon E." <SMcClure@ReedSmith.com>, "Short, Carolyn P." <CShort@ReedSmith.com>
**Cc:** Tiffanie Benfer <tbenfer@hardwickbenfer.com>
**Subject:** Re: price for imaging of cell phone

I have instructed Maragell to complete a "physical bit-by-bit forensic image" of the thumb drive and computer, and that has been done.

2

I have no reason to believe that the voice recording is on the thumb drive.  That was imaged in response to other document requests asking for all metadata associated with Todd Smith's journal and the draft of the ethics complaint.  (It might be that just one of those two documents was on the thumb drive.  I can't remember as I sit here right now.)

Virginia L. Hardwick, Esq.

**_Please note that our firm name and my email address have recently changed._**

Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA  18901
Office:  (215) 230-1912
Fax: (215) 230-1913
Cell: (267) 614-6739
www.hardwickbenfer.com


Email communications do not alone form an attorney client relationship.  An attorney client relationship is formed only by mutual agreement with the signing of a written retainer agreement.

This email may contain privileged or confidential communications. If it has been received in error, please return to the sender and delete.

---

**From:** <McClure>, "McClure, Shannon E." <SMcClure@ReedSmith.com>
**Date:** Friday, June 6, 2014 4:22 PM
**To:** Virginia Hardwick <vhardwick@hardwickbenfer.com>, "Short, Carolyn P." <CShort@ReedSmith.com>
**Cc:** Tiffanie Benfer <tbenfer@hardwickbenfer.com>
**Subject:** RE: price for imaging of cell phone

Ginger –

Your email below addresses the costs for the physical imaging of the cell phone.  Can you please confirm that a full and complete forensic physical image was already created of both the personal computer and the thumb drive?  Also, can you please explain the reference to the thumb drive in your 2:30 pm email from earlier today – was there another copy of the recording on a thumb drive?

Thanks.

**Shannon McClure Roberts**
**Partner, Commercial Litigation**
ReedSmithLLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
o: 215.851.8226 | c: 267.342.1243 | f: 215.851.1420
smcclure@reedsmith.com |www.reedsmith.com
**NOTE NEW ADDRESS**

3

U.S.: New York, Chicago, Los Angeles, Washington DC, San Francisco, Pittsburgh, Houston, Princeton, Northern Virginia, Wilmington, Silicon Valley, Century City, Richmond
Asia: Hong Kong, Beijing, Shanghai, Singapore, Kazakhstan
Europe: London, Paris, Munich, Greece
Middle East: Abu Dhabi, Dubai

**From:** Virginia Hardwick [mailto:vhardwick@hardwickbenfer.com]
**Sent:** Friday, June 06, 2014 4:16 PM
**To:** Short, Carolyn P.
**Cc:** McClure, Shannon E.; Tiffanie Benfer
**Subject:** price for imaging of cell phone

Carolyn,

To follow up our conversation earlier today, the price for the physical imaging of the cell phone is $1500.  As the vendor describes it to me, this is more involved than the logical imaging that we already had done.

Please let me know if you approve and agree to pay that amount.

Ginger


Virginia L. Hardwick, Esq.

***Please note that our firm name and my email address have recently changed.***

Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA  18901
Office:  (215) 230-1912
Fax: (215) 230-1913
Cell: (267) 614-6739
www.hardwickbenfer.com


Email communications do not alone form an attorney client relationship.  An attorney client relationship is formed only by mutual agreement with the signing of a written retainer agreement.

This email may contain privileged or confidential communications. If it has been received in error, please return to the sender and delete.

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

* * *

To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication  (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state

and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Disclaimer Version RS.US.20.10.00

# EXHIBIT B

# REDACTED

**From:** Virginia Hardwick
**Sent:** Friday, June 06, 2014 2:30:03 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Short, Carolyn P.; McClure, Shannon E.
**Cc:** Tiffanie Benfer
**Subject:** Smith v Unilife

Dear Carolyn,

As I told you when you called a few minutes ago, I was just writing you an email about your motion papers.

I have just pulled up the motion papers you filed yesterday while we were in York for the deposition of Melissa DeHass.

I am sorry that you did not discuss this with me before filing the motion. It seems to me that you have misstated what I said to you in our brief conversation in the courthouse hallway.

Perhaps you just misunderstood. If you had spoken to me about this while we were together yesterday, we might have cleared up the misunderstanding.

To be clear: Despite my disagreement with your demand that the computer and iphone be imaged in their entirety, in the interest of ensuring that all evidence was preserved, I instructed Maragell as follows: (1) create a logical image of the iPhone 4; and (2) create a physical bit-by-bit forensic image of a thumb drive and a computer hard drive. The devices were dropped off at Maragell on Monday, June 2, the first possible opportunity after your letter agreeing to the use of Maragell late in the day on Thursday, May 29. Maragell has completed that task.

At my instruction, Maragell is keeping the images at their offices.

When we were at the courthouse on June 3, I saw an email from Maragell about a possible technical issue that they were trying to resolve concerning portions of the imaging of the iphone. I saw this email while we were speaking, after the oral argument was complete. In the interest of being forthcoming, I immediately told you that I had just been informed about a technical issue.

My understanding from speaking today to Jeff Brenner at Maragell is that he has conferred with Apple, and has a resolution to the technical issue. He also confirmed that nothing has disturbed any metadata on the iPhone.

I told you in our phone conversation that Maragell is getting me a price for the full physical imaging. I will let you know the cost of that when I get it, and you will let me know whether you wish to pay to have that done.

I am sure we can work out the preservation of evidence issues. This agreement to preserve evidence is not an agreement on how that evidence is to be used.

I will finish reading your motion and discuss with you our response to the issues involving production.

Have a good weekend,

1

Ginger


Virginia L. Hardwick, Esq.

***Please note that our firm name and my email address have recently changed.***

Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA  18901
Office:  (215) 230-1912
Fax: (215) 230-1913
Cell: (267) 614-6739
www.hardwickbenfer.com


Email communications do not alone form an attorney client relationship.  An attorney client relationship is formed only by mutual agreement with the signing of a written retainer agreement.

This email may contain privileged or confidential communications. If it has been received in error, please return to the sender and delete.

2

# EXHIBIT C

# REDACTED

---

**From:** Virginia Hardwick
**Sent:** Tuesday, June 10, 2014 11:04:37 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Short, Carolyn P.; McClure, Shannon E.
**Cc:** Tiffanie Benfer; Jeff Brenner
**Subject:** preservation of Todd Smith's iPhone

Carolyn and Shannon,

We can arrange to have Todd Smith's iPhone imaged through Maragell on Friday, June 13. You have previously agreed to pay the $1500 for that.

I have cc'd Jeff Brenner of Maragell so you can confirm your willingness to pay and arrange to pay Maragell directly before Friday.

I'd like to be clear that I do not see any need for the imaging you have requested. We are undertaking this only in the interest of avoiding unnecessary conflict. Of course, this imaging is being done for preservation only and does not constitute an agreement to produce.

Please advise whether you still wish to have this done.

Ginger


Virginia L. Hardwick, Esq.

**_Please note that our firm name and my email address have recently changed._**

Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA  18901
Office:  (215) 230-1912
Fax: (215) 230-1913
Cell: (267) 614-6739
www.hardwickbenfer.com


Email communications do not alone form an attorney client relationship.  An attorney client relationship is formed only by mutual agreement with the signing of a written retainer agreement.

1

This email may contain privileged or confidential communications. If it has been received in error, please return to the sender and delete.