**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TALBOT TODD SMITH**<br><br>**v.**<br><br>**UNILIFE CORPORATION, et al.** | **CIVIL ACTION**<br><br>**NO. 13-5101** |

**Baylson, J.**                                                                          **November 13, 2014**

## MEMORANDUM RE MOTION FOR CONTEMPT AND MOTION TO AMEND PROTECTIVE ORDER

"Sauce for the goose is sauce for the gander"—a familiar proverb which cautions against inconsistent practices in life or the law—was referred to as "Culinary Rule #1" by Edward R. Becker, the highly esteemed former Chief Judge of the Third Circuit, when he was a trial judge.[1] In this case, because Defendants have taken inconsistent positions on the application of a Protective Order, resulting in substantial burdens on Plaintiff, the Court will award attorneys' fees to Plaintiff.

Plaintiff has filed a motion to hold Defendants and/or defense counsel in contempt for violation of a Protective Order governing confidential information (ECF No. 67) and to amend the Protective Order (ECF No. 100).  Plaintiff alleges Defendants violated the Protective Order by turning over a recording and deposition transcript—both of which Defendants had designated as confidential—to an attorney and police officer for the purpose of filing a criminal complaint against Plaintiff for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5701 *et seq.* (the "Pennsylvania Wiretapping Act").

The Court finds Plaintiff has not met the high burden of establishing contempt and will deny the motion for contempt.  But because Defendants have taken inconsistent positions with

---

[1] Judge Becker referred to "you cannot have your cake and eat it, too" as Culinary Rule #2.

regard to their application of the Protective Order on three separate occasions, without good cause, causing Plaintiff's counsel to expend substantial time on motion practice on peripheral issues, the Court will award attorneys' fees in connection with briefing and argument in Court on this issue in favor of Plaintiff and against Defendants.   The Court will deny the motion to amend the Protective Order.

As a summary, this is a "whistle blower" complaint brought by a former employee of Defendant Unilife Corporation under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6.   See ECF 18, 89.   Plaintiff alleges discriminatory and retaliatory termination by Defendants because of Plaintiff's opposition to, and protected disclosures relating to, alleged shareholder fraud and Unilife's failure to comply with certain Food and Drug Administration requirements.

## I. The Protective Order

The issues presented by this motion revolve around a Protective Order concerning confidential information which was agreed to by the parties and approved by the Court on January 15, 2014 (ECF No. 15), and subsequently amended on June 27, 2014 (ECF No. 63).[2]   Paragraph 5 of the Protective Order notes that "Confidential Information may be used solely for the purposes of this litigation and for no other purpose" and lists certain "Authorized Persons" to whom confidential information may be disclosed and viewed.   See ECF 15, 63.   But prior to disclosing confidential information, paragraph 6 of the Protective Order requires a party do the following:

> 6.   Before any Party discloses Confidential Information to any Authorized Person . . . that Party shall provide the Authorized Person with a copy of this Order and ensure that the Authorized Person signs at the end of this Order the following

---

[2] When approving the agreed Protective Order, the Court issued a Confidentiality Order (ECF No. 16) finding that, under Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994), "the affected persons' privacy interests far outweigh the public's interest in disclosure and that good cause" existed for entry of the proposed Protective Order.

statement:

> I have read the foregoing Stipulated Protective Order governing Confidential Information.   I understand all of its terms and provisions and agree to be bound by the Order in all respects.

Before disclosing any Confidential Information to Authorized Persons identified in paragraph 5(c), the disclosing party shall first notify all other Parties in writing that such 5(c) Authorized Persons have executed the above statement and will be provided access to Confidential Information.

See ECF 63, ¶ 6.

The Protective Order also contains provisions governing the disclosure of Confidential Information to persons who are not listed as Authorized Persons.   Paragraph 7 of the Protective Order provides that:

> [I]f counsel for a Party believes that any particular information designated as Confidential Information should be disclosed other than to an Authorized Person, counsel for such Party shall notify counsel for the designating Party in writing of such belief, identifying with particularity the document or information that he or she believes must be disclosed, and the basis for his or her contention that such information should be disclosed.   Counsel for both the designating and objecting parties shall make a good faith effort to resolve all disputes . . . without Court intervention.   If counsel are unable to resolve such disputes . . . counsel for either the objecting Party or designating Party may ask the Court to resolve the dispute.

See id., ¶ 7.   In addition, paragraph 9 of the Protective Order provides:

> No one who has access to Confidential Information . . . shall distribute, disclose, divulge, publish or otherwise make available any Confidential Information . . . or disclose the subject matter of Confidential Information to any other person, except persons who are also authorized to view or have access to Confidential Information under the terms of this Order, unless such persons have first obtained leave of the Court or the consent of the designating Party to disclose such Confidential Information.

See id., ¶ 9.

## A.  First Dispute Regarding the Protective Order

The first dispute regarding the Protective Order arose when Plaintiff wanted to share

confidential information from this case with attorneys at Boies Schiller & Flexner LLP ("Boies Schiller"), who represent Plaintiff in connection with his report to the SEC. Plaintiff's counsel moved to amend the Protective Order to permit Plaintiff to share confidential information with those attorneys (ECF No. 23). Defendants opposed Plaintiff's motion, arguing Plaintiff could not demonstrate good cause for the amendment and Defendants would potentially be harmed by disclosure of confidential information to the Boies Schiller attorneys (ECF No. 25). Defendants took the position that the Boies Schiller attorneys were not authorized to receive confidential information because they did not represent Plaintiff in this case and contended Plaintiff could not provide confidential materials directly to the SEC because that would be use of confidential documents for purposes other than this litigation. Plaintiff replied that Defendants' primary motivation was to impede his ability to communicate and cooperate with the SEC, not to protect Defendants' trade secrets or confidential business information (ECF No. 28). After the Court held oral argument on Plaintiff's motion on June 3, 2014, Defendants agreed to amend the Protective Order to add the Boies Schiller attorneys as Authorized Persons. See ECF 63.

**B. Second Dispute Regarding the Protective Order**

The second dispute centers on a recording made by Plaintiff of the conversation between Plaintiff and an officer of Defendant Unilife Corporation on June 21, 2012, prior to the filing of this lawsuit. The facts concerning this recording appear largely undisputed. Plaintiff was in a meeting with Unilife executive Dr. Ramin Mojdeh, and both were seated at a conference table across from each other in a private office. Plaintiff had a cell phone and activated its "voice record" function, which enabled him to record his conversation with Dr. Mojdeh. Plaintiff placed the cell phone face down so that Dr. Mojdeh presumably did not know that the conversation was

being recorded.   The conversation lasted for approximately 79 minutes, and a transcript of the conversation has been prepared and produced in this litigation.

After the filing of this lawsuit, the parties exchanged discovery requests.   In response to a document request by Defendants, Plaintiff identified the existence of the recording in February 2014, but did not at that time designate it as confidential.

On June 5, 2014, Defendants moved to compel the production of the recording (ECF No. 43).   Defendants took the position that Plaintiff's recording of the conversation, which was done without Dr. Mojdeh's knowledge, violated a provision of the Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. Ann. § 5703(1).   Plaintiff's response to this motion acknowledged the fact of the recording, asserted neither he nor his counsel had listened to it, and indicated he had taken steps to preserve it (ECF No. 44).   Both the motion and response detailed the cooperative efforts of both counsel to secure and produce a copy of the recording in an appropriate digital format.   Plaintiff contended the recording did not violate the Pennsylvania statute.   The Court's Order of June 9, 2014, required the parties to preserve all evidence in their possession, custody, or control (ECF No. 46).

While Defendants' motion to compel was pending, Defendants took Plaintiff's deposition on June 17, 2014.   Among other topics, Defendants asked Plaintiff about the recording.   On the record at Plaintiff's deposition, Defendants designated Plaintiff's entire deposition testimony as confidential under the Protective Order.   See ECF 86, Hr'g Tr., 16:22-17:17, Sept. 9, 2014. Plaintiff had designated other portions of Plaintiff's testimony—unrelated to the recording—as confidential under the Protective Order.   See id.

Production of the recording itself was the topic of several hearings in this Court on June 18

5

and 25, 2014, and September 9, 2014.   At the June 18, 2014 hearing, the parties expressed concern whether counsel listening to the recording would violate the Pennsylvania Wiretapping Act.   Following that hearing, the parties agreed to a stipulation, which the Court approved (ECF No. 50), that counsel could listen to the recording without violating the Pennsylvania statute.[3]

On June 19, 2014, Defendants indicated by letter to Plaintiff that, having listened to the recording, Defendants were designating it as confidential.   Plaintiff had, shortly after, agreed the recording was confidential.   See ECF 86, Hr'g Tr., 13:19-14:4, Sept. 9, 2014.   After the June 25, 2014 hearing, the parties agreed to a stipulation, which the Court approved (ECF No. 64), providing that the recording would be treated as discovery, noting that the recording had been designated as confidential by Defendants and would be treated as such, and finding that from June 26, 2014, counsel and/or clients could listen to the recordings, subject to the terms of the Protective Order, without violating the Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. Ann. § 5703 or § 5725.

At the September 9, 2014 hearing, the Court reviewed these facts with counsel, and initially concluded that the Court should make an inquiry as to whether the contents of the recording were "confidential" under the terms of the Protective Order.   Counsel agreed to prepare and review a written transcript, to discuss any suggested errata for misspellings or otherwise, and to submit a copy of the recording and transcript to the Court by September 18, 2014.   The Court would then review the material and advise counsel whether, in the Court's judgment, the contents of the recording met the definition of "confidential" under the terms of the Protective Order.   If so, the Court indicated it would then advise counsel by letter as to what further proceedings would

---

3 Plaintiff has asserted his conduct does not violate the Pennsylvania Wiretapping Act, citing Commonwealth v. Spence, 91 A.3d 44 (Pa. 2014).   The Court takes no position as to whether Plaintiff's conduct violated the Pennsylvania Wiretapping Act.

take place on this issue.

On September 10, 2014, Defendants sent a letter to Plaintiff de-designating the recording as confidential.  See ECF 104, Ex. C.  Defendants gave no reason for their de-designation of the recording in their letter to Plaintiff.  This reflects another change of position by Defendants, who had long maintained that the recording was confidential.

## C.  Third Dispute Regarding the Protective Order

Plaintiff's motion for contempt arises out of the third dispute regarding the Protective Order and centers on Defendants' disclosure of confidential materials to attorney Paul Minnich, Esquire, in Lancaster, Pennsylvania, who was apparently retained specifically by Defendants to represent them in connection with filing a criminal complaint against Plaintiff in York County, Pennsylvania.

On June 18, 2014, Defendants advised Mr. Minnich that they had learned through discovery that Plaintiff had "secretly recorded an in-person meeting with Dr. Mojdeh," and Defendants "sought [Mr. Minnich's] advice regarding reporting Smith's conduct to the appropriate authorities."  See ECF 69, Ex. 10, Minnich Dec. I.  On June 19, 2014, Mr. Minnich reported Plaintiff's recording of Dr. Mojdeh to the York County District Attorney's Office, which advised him to contact the police.  See id.  Minnich contacted the Northern York County Regional Police Department.  See id.; ECF 67, Ex. D, Police Criminal Complaint, Affidavit of Probable Cause, Det. William D. Haller; ECF 86, Hr'g Tr. 31:20-25, Sept. 9, 2014 (defense counsel acknowledges "that an investigation was started when Minnich called the police department"); ECF 69, Defs.' Br. at 6.  Mr. Minnich advised the police that, "in a civil deposition," Plaintiff admitted to recording Dr. Mojdeh without his knowledge, and Defendants

wanted to report his allegedly illegal conduct.   See ECF 69, Ex. 10, Minnich Dec. I; ECF 67, Ex.

D, Affidavit of Probable Cause, Det. William D. Haller.   The Affidavit of Probable Cause by Det.

Haller also notes that Mr. Minnich told the police that "the actual recording is on file and will be

provided to Police."   See ECF 67, Ex. D, Affidavit of Probable Cause, Det. William D. Haller.

On June 20, 2014, defense counsel provided Mr. Minnich with a DVD copy of Plaintiff's

deposition, which Mr. Minnich gave to the police.   See ECF 86, Hr'g Tr. 42:21-25, Sept. 9, 2014.

Mr. Minnich already had the DVD copy of the deposition when police contacted him to obtain

proof of Plaintiff's alleged illegal conduct.   See ECF 69, Ex. 10, Minnich Dec. I.   Mr. Minnich

reviewed portions of the DVD copy of Plaintiff's deposition relating to Plaintiff's alleged illegal

conduct prior to providing it to the police.   See id.; ECF 86, Hr'g Tr. 43:10-20, Sept. 9, 2014.[4]

On July 8, 2014, Mr. Minnich sent the deposition transcript to the police at their request

after he reviewed it.   See ECF 69, Ex. 10, Minnich Dec. I; ECF 86, Hr'g Tr. 45:12-25, Sept. 9,

2014.

On August 7, 2014, Mr. Minnich received a copy of the recording, which he did not listen

to or review.   See ECF 72, Ex. 1, Minnich Dec. II.   On August 8, 2014, Mr. Minnich delivered a

copy of the recording to the police, who had requested it.   See id.

Even though Defendants had designated the recording and transcript as confidential under

the Protective Order, Defendants made no effort to comply with the provisions of the Protective

Order about the use of confidential materials.   Mr. Minnich is not an Authorized Person under the

Protective Order, Defendants did not seek to modify the Protective Order to add him as an

Authorized Person, and Defendants did not require Mr. Minnich sign the statement specified in the

---

4 The Affidavit of Probable Cause by Det. Haller notes that "[a] taped confession and deposition paperwork under
oath in civil court of Smith admitting to illegally recording Mojdeh without his knowledge was further provided to
Police."   See ECF 67, Ex. D, Affidavit of Probable Cause, Det. William D. Haller.

Protective Order before he received the confidential materials.   There is no showing in the record that Mr. Minnich had any knowledge of the Protective Order at the outset of his representation of Defendants.

Defendants, in responding to Plaintiff's motion for contempt, have basically acknowledged these events.   Defendants claim their conduct did not violate the Protective Order because (1) the Protective Order should not have been granted under <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 785 (3d Cir. 1994) (which is another change in Defendants' prior position) and (2) paragraph 17 of the Protective Order permitted Defendants to cooperate with the investigation into Plaintiff's criminal conduct.   That paragraph provides:

> 17.   Nothing in this Stipulated Protective Order is intended, or shall be construed, to prevent any Party or other person from cooperating with any investigation or proceeding conducted by any government agency.

<u>See</u> ECF 63, ¶ 17.   This paragraph of the Protective Order applies to cooperation with a government investigation, not to initiation of that investigation.   Although Defendants contend Mr. Minnich only turned the recording and transcript over to the police after the police requested those materials as part of the investigation into whether Plaintiff violated the Pennsylvania Wiretapping Act, the facts here make clear that Defendants initiated that investigation by retaining Mr. Minnich and providing him with the confidential items.   Defense counsel acknowledged making "a judgment call that Section 17 applied" to the reporting of Plaintiff's conduct to the police through Mr. Minnich.   <u>See</u> ECF 86, Hr'g Tr. 36:22, Sept. 9, 2014.   Defendants' initiation of the criminal proceeding by delivering confidential information to Mr. Minnich without complying with the Protective Order preceded any "cooperation" with the police's subsequent request for information.

When compared to Defendants' opposition to Plaintiff's sharing of confidential

information with Boies Schiller, Defendants' giving the recording to Mr. Minnich without complying with the Protective Order represents yet another inconsistency in Defendants' position on the application of the Protective Order.

**D.  Plaintiffs Motion to Amend the Protective Order**

On October 2, 2014, the Court sent a letter to counsel indicating that, having reviewed the transcript of the recording, at least portions of it could be considered confidential under the Protective Order.   But the Court requested additional briefing as to whether the nature of the conversation between Plaintiff and Dr. Mojdeh is subject to protection under <u>Pansy</u>.   Both parties filed letter briefs, which the Court has reviewed.

On October 16, 2014, Plaintiff filed a motion (ECF No. 100) to amend the Protective Order to provide that the confidentiality of materials would lapse unless a party re-designated them, the recording would not be considered confidential information, and parties could listen to the recording without violating the Pennsylvania Wiretapping Act.   Defendants oppose Plaintiff's motion (ECF No. 104).

## II. Analysis

**A. Retrospective Application of <u>Pansy</u>**

Defendants first contend their conduct did not violate the Protective Order because the Order should not have been granted under the balancing test set forth in <u>Pansy</u>.   Defendants argue Plaintiff, as the party seeking to maintain confidentiality, has not met its burden of establishing good cause to keep the recording and transcript confidential.   But Plaintiff argues the key fact is that the recording and transcript were confidential at the time Defendants turned them over to Mr. Minnich and the police.

10

"Courts have inherent power to grant orders of confidentiality over materials not in the court file." Pansy, 23 F.3d at 785. The party seeking to enforce confidentiality bears the burden of establishing "good cause," which requires showing with specificity "that disclosure will work a clearly defined and serious injury to the party seeking closure." Id. 786. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (internal quotation marks and citation omitted).

To decide whether a party has established good cause, courts balance public and private interests. The Third Circuit has recognized several factors courts should consider as part of this balancing test:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate or improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public trust.

E.E.O.C. v. Kronos Inc., 620 F.3d 287, 302 (3d Cir. 2010).

Defendants had the right to designate the transcript of Plaintiff's deposition as confidential under the Protective Order at the June 17, 2014, deposition. After receiving the recording, Defendants immediately designated it as confidential under the Protective Order on June 19, 2014. Plaintiff did not dispute that the recording and portions of the deposition transcript were

11

confidential.   Despite having designating these materials as confidential, Defendants turned them over to Mr. Minnich—who did not know of the Protective Order—for use in the criminal proceeding Defendants had initiated against Plaintiff without complying with the Protective Order.   Defendants subsequently, after the Court raised issues concerning <u>Pansy</u>, changed their minds about the confidentiality of the recording, and on September 10, 2014, removed the confidential designation of the recording without providing any reason for their decision. Defendants ask that the Court should retrospectively find that the materials were not confidential and that the Protective Order did not apply, because of <u>Pansy</u>, and because Defendants used these materials to initiate a criminal prosecution.   Plaintiff disagrees and requests that the Court maintain the confidential designation as it existed at the time of Defendants' actions.

        <u>Pansy</u> does not stand for the proposition that a party's past violation of a protective order can be nullified by a later determination that the order was improvidently granted or by a party's subsequent change of position about the confidentiality of a particular document.   In <u>Pansy</u>, the newspapers seeking to modify or vacate the confidentiality order went to court and sought disclosure of the settlement agreement because of the public interest in obtaining access to it. <u>Pansy</u>, 23 F.3d at 775.   They did not obtain the settlement agreement, publish it, and then argue the court's order should be rendered retroactively ineffective—and their violation of that order excused—because of the strong public interest in disclosure of the agreement.   In another case, the district court granted plaintiff's motion for relief from confidentiality orders so that it could provide documents, including tax returns, to law enforcement regarding defendant's alleged theft of cable.   <u>Gen. Instrument Corp. of Del. v. Nu-Tek Elec. and Mfg., Inc.</u>, 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998).   Defendant then moved for reconsideration of the order permitting disclosure of

its tax returns, which the court denied.   Id.   As in Pansy, plaintiff obtained a court order permitting the disclosure of confidential information before actually disclosing the information.

Defendants should have done likewise.[5]   They could have requested that Plaintiff agree to the disclosure and, if Plaintiff refused, filed a motion with the Court, which would have warranted the Court applying the appropriate balancing test under Pansy and allowed the parties an opportunity to argue whether the recording and the transcript should have been kept confidential.

As noted above, when Plaintiff sought to disclose confidential information to the Boies Schiller attorneys, Plaintiff filed a motion seeking to amend the Protective Order to permit such disclosure (ECF No. 23) and did not share confidential information with those attorneys until the Court had modified the Protective Order to add them as "Authorized Persons."   See ECF 63, ¶ 5. Despite taking the position at that time that Plaintiff's sharing of confidential information with the Boies Schiller attorneys or the SEC would violate the Protective Order, Defendants now argue their sharing of confidential information with Mr. Minnich and the police was appropriate under the Protective Order.

Defendants' argument would appear to permit a party to violate a court order by disclosing information it designated as confidential and then arguing after the fact that the order should never have been entered, either because the public interest in disclosure outweighed the private interest under Pansy or because the party no longer believed the information to be confidential.   The Court believes this argument is illogical and finds no support under Pansy.

What Pansy does provide is that a party may challenge a confidentiality order as

---

5 There could be occasions in which exigent circumstances force a party to violate a confidentiality order, such as when imminent threats to health or safety must be reported to law enforcement.   But the conduct here does not rise to that level.   Nor does the impending expiration of the statute of limitations of the Pennsylvania Wiretapping Act provide justification for failure to seek a Court order, since Defendants knew of the recording for more than five months before initiating the criminal prosecution.

improvidently granted or request modification of such an order.   But a court's decision to modify or vacate such an order has only prospective effect on the ability of a party to disclose previously confidential information.   It does not apply retrospectively to cleanse prior violations of a protective order caused by the disclosure of information considered confidential at the time it was revealed.

## B. Contempt

### 1. Plaintiff's Motion for Contempt

Plaintiff requests that the Court find Defendants in contempt for disclosing the recording and the deposition transcript—both of which had been designated confidential under the Protective Order—to Mr. Minnich and the police.   To establish civil contempt, Plaintiff must show, by clear and convincing evidence, (1) the existence of a valid Court order; (2) that Defendants had knowledge of the order; and (3) that Defendants disobeyed the order.   See F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010).   This is a "heavy burden."   Quinter v. Volkswagen of Am., 676 F.2d 969, 974 (3d Cir. 1982).   Ambiguities must be resolved in favor of the party charged with contempt, and courts should hesitate to find a party in contempt "when there is ground to doubt the wrongfulness of the conduct."   Id. (internal quotations and citations omitted).   A party need not have acted willfully to be found in contempt because "good faith is not a defense to civil contempt."   Id. (internal quotation marks and citation omitted).

In Littlejohn v. Bic Corp., 851 F.2d 673 (3d Cir. 1988), defendant sought to hold plaintiff's counsel in contempt for violating a protective order by failing to return confidential documents. 851 F.2d at 683.   The Third Circuit noted the importance of "[s]crupulous compliance with protective court discovery orders," including protective orders, but affirmed the district court's

14

denial of the contempt motion on the grounds that the documents at issue had been admitted into evidence and were subject to a public right of access.  Id. at 686.  But the court remanded the issue of whether the attorney's retention of one exhibit that was not admitted into evidence was contemptuous.  Id.  On remand, the district court declined to hold the attorney in contempt, finding he retained the exhibit in his mistaken but good faith and reasonable belief that it had been admitted into evidence.  Littlejohn v. Bic Corp., 697 F. Supp. 192, 193–94 (E.D. Pa. 1988).

In Quinter, defendant Volkswagen produced an index of crash tests pursuant to a protective order.  676 F.2d at 971.  The index was provided to plaintiff's expert witness and the expert subsequently (1) held up the document on the television show "20/20" and (2) provided the document to another plaintiff's attorney in a separate case against defendant.  Id. at 971–72.  The Third Circuit held plaintiff had not presented "clear and convincing evidence" of contempt with regard to the "20/20" incident because the district court had found that viewers of the show could not read what was on the document.  Id. at 974.  But the court concluded that turning the index over to an attorney in a separate case violated the protective order and was contemptuous.  Id.

In York Group, Inc. v. Pontone, No. 10-1078, 2014 WL 3811014, at *8 (W.D. Pa. Aug. 1, 2014), the district court held plaintiffs' attorneys in contempt for providing a consulting agreement to counsel in a different case pending in Delaware.  The consulting agreement was produced pursuant to a protective order that allowed for disclosure of protected material only for use in the case in the Western District of Pennsylvania.  Pontone, 2014 WL 3811014, at *7.  But plaintiffs' counsel provided the consulting agreement to other attorneys within their firm who were working on a separate case in Delaware state court that involved some of the same parties.  Id. at *7–8. The court found that this disclosure of the agreement and its use in a separate case violated the

protective order and was contemptuous.   Id. at *8.

Here, Plaintiff has not met its heavy burden of establishing civil contempt because Plaintiff cannot show, by clear and convincing evidence, that Defendants disobeyed a valid Court order. See F.T.C., 624 F.3d at 582.   Paragraph 17 of the Protective Order permitted Defendants to cooperate with an investigation carried out by a government agency.   Defendants assert that Defendants believed section 17 of the Protective Order applied to their decision to share confidential information with Mr. Minnich with the instruction that he use it to initiate a criminal proceeding against Plaintiff.   The facts are clear that Defendants initiated the criminal proceeding, and the provisions of the Protective Order do not provide an exception for Defendants' initiation of a criminal complaint.   However, an argument can be made that public policy should not allow a citation for contempt for erroneous interpretation of a confidentiality order in a civil litigation to preclude the reporting of a crime.   Accordingly, once the crime was reported and the police requested the recording and deposition transcript, providing it was within the scope of "cooperation" with an ongoing investigation.

Moreover, Defendants' rationale for turning over the recording and transcript—reporting a crime—is stronger than a reasonable but mistaken belief an exhibit had been admitted into evidence, Littlejohn, 697 F. Supp. at 193–94, or the fact that the public could not read a confidential document shown on a television show.   Quinter, 676 F.2d at 974.   Nor is this a case in which confidential information was turned over to an attorney in a separate case against the same defendant, id., or to attorneys within the same firm to gain an advantage in a separate case involving many of the same parties, Pontone, 2014 WL 3811014, at *7–8.   Accordingly, the Court believes there is "ground to doubt the wrongfulness" of Defendants' conduct in turning over

16

the recording and transcript to Mr. Minnich and the police, and will deny Plaintiff's motion for contempt.   See Quinter, 676 F.2d at 974.

### 2. Defendants' Inconsistent Positions and Award of Attorneys' Fees

Although the Court declines to find Defendants in contempt for violation of the Protective Order, the Court must conclude, considering the undisputed facts, that Defendants have changed their position three times on the application of the Protective Order, and on the designation of materials as confidential, for strategic reasons, based on the proverbial "how the winds blow," rather than any consistent legal or factual position.

First, Defendants cited and relied on the Protective Order as the basis of their opposition to Plaintiff's quite reasonable request that Plaintiff be allowed to share some of the facts in this case with his attorneys at the Boies Schiller firm.   Second, Defendants designated the recording as confidential on June 19, 2014, but then de-designated the recording on September 10, 2014, without providing any reason for their change of position.

Third, Defendants ignored the terms of the Protective Order when they initiated the criminal prosecution of Plaintiff.   Defendants retained Mr. Minnich, an outside attorney not involved in this proceeding, to act on their behalf.   The Court finds that sharing confidential information with Mr. Minnich, without going through the procedures specified under the Protective Order, violated the Protective Order.   Defendants, having objected to Plaintiff sharing confidential information with Boies Schiller, are estopped from urging a different result as to their sharing of confidential information with Mr. Minnich.   Mr. Minnich was clearly not a law enforcement officer, but an attorney whom Defendants retained to represent them in the initiation of the criminal complaint.

Defendants have taken different positons on the Protective Order depending on their perceived need to use (and prevent the use of) confidential information; i.e. in strategic reaction to Plaintiff's position.   These changing positions have caused Plaintiff to incur significant costs in time and energy expended by Plaintiff's counsel.   The same is true for Defendants' shifting positons as to the confidentiality of the recording and transcript.

The Court concludes that Defendants' inconsistent positions have resulted in a degree of unfairness in the pretrial proceedings by imposing on Plaintiff the need to expend a great deal of time briefing and arguing these somewhat peripheral issues.   Defendants' conduct has made the prosecution of this case more burdensome and more expensive for Plaintiff and his counsel than necessary.   The Court further finds that, in retrospect, Defendants did not have good grounds to oppose Plaintiff's request to share information with the Boies Schiller firm, and did not have good grounds for changing their position on the application for the Protective Order to the recording and transcript.   As noted above, the Court does not take any position as to whether Plaintiff has violated any Pennsylvania wiretapping law, but it does find that Defendants ignored the provisions of the Protective Order when they made the recording and deposition transcript available to Mr. Minnich with the instruction to use them to initiate a criminal prosecution.

The Court notes that the briefing and presentations by counsel on both sides have been of high quality, with well written briefs, accurate legal citations, and each attorney making their best efforts to represent their client.   Nonetheless, Defendants' strategic conduct reviewed in this Memorandum requires the Court to exercise its discretion to impose attorneys' fees because Defendants have made the pretrial proceedings unnecessarily combative and prolonged on the issues discussed above (which are unrelated to the merits of Plaintiff's complaint) and have

18

required Plaintiff's counsel to divert their energies from prosecution of the merits of the case.   See Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869 (3d Cir. 1984) (holding that imposing excess costs, including attorneys' fees, caused by unjustified attorney conduct or delay during the pretrial process on the attorney responsible is the "preferable sanction"); Littlejohn, 697 F. Supp. at 194 ("Even where no finding of contempt is made, the Court may award complainant in a civil contempt proceeding attorneys' fees and expenses incurred in the attempt to ensure the enforcement of the Court's Order.").

For these reasons, the Court has decided to award attorneys' fees in favor of Plaintiff and against Defendants for the preparation, including legal research and writing, of the briefs that Plaintiff has filed on the issues discussed in this Memorandum, as well as on the time spent in argument in Court on these issues.

Plaintiff shall prepare a statement of counsel's time spent on the preparation of briefs and Court appearances on these topics.   The Court will not award attorneys' fees for the time taken by Plaintiff's counsel for discussion with Plaintiff or defense counsel, or for appearances in Court not related to argument on the issues discussed in this Memorandum.   Plaintiff's counsel's usual hourly rate should be used.   Plaintiff shall prepare this document and serve a copy on Defendants within fourteen (14) days.   The Court encourages counsel to try to reach agreement on the amount of time spent, even if the propriety of the Court's Order is disputed.   Plaintiff's statement and any brief in opposition shall be filed with the Court within thirty (30) days.

## C. Modification of Protective Order and Prospective Application of <u>Pansy</u>

The parties appear to agree that the recording is no longer confidential.   Defendants have de-designated the recording as confidential, and Plaintiff has not sought to re-designate it as such.

Plaintiff has requested that the Court vacate the Protective Order and has also moved for a procedure by which the parties would be required to re-designate confidential information (ECF No. 100).   Plaintiff contends Defendants have marked virtually all documents in the case confidential and have made no showing of good cause for these designations under Pansy. Plaintiff also requests that the Court amend the Protective Order as follows to provide that the recording is no longer confidential and to make clear that any use of the recording in civil litigation before this Court will not constitute a basis for civil or criminal violations of the Pennsylvania Wiretapping Act:

> As of this date, the recording is no longer designated as Confidential Information pursuant to the Amended Protective Order.   Any use of the recording in this civil litigation (including but not limited to the use of the recording in the discovery process or the attachment of the recording or the transcript of the recording to any publicly filed pleadings) shall not constitute the basis for civil or criminal violations of the Pennsylvania Wire Tapping Act, 18 Pa. C.S.A. § 5703 *et seq.*

Defendants oppose Plaintiff's motion (ECF No. 104), arguing that Plaintiff's proposed procedure would be unduly burdensome, Defendants have produced thousands of pages of documents in reliance on the Protective Order, and Plaintiff has not made any effort to comply with Paragraph 7 of the Protective Order, which establishes a process for challenging confidentiality designations.   Defendants also argue that Plaintiff's proposed modification of the Protective Order is unnecessary.

The Court believes vacating the Protective Order is not warranted at this time.   Pansy endorses the entry of umbrella protective orders in cases involving large-scale discovery upon a threshold showing of good cause.   See Pansy, 23 F.3d at 787 n.17.   Moreover, for modifications of protective orders, Pansy requires the Court to conduct the same balancing test used to decide whether to grant the order in the first place with one additional factor—the reliance of the parties

on the order.   Id. at 790.   The party seeking modification of the order must come forward with a reason to modify the order.   Id.

In light of this dispute, the Court requests that the parties review all materials opposing counsel assert were improperly designated as confidential in this case and use the procedure set forth in Paragraph 7 of the Protective Order to attempt to work out any disputes.   The parties may object to a confidential designation even if they have not done so previously.   To the extent that the parties are unable to work out such disputes, the Court will resolve them.   The party seeking the confidential designation will bear the burden of showing good cause, and the Court will evaluate whether the confidential designation is warranted by applying the balancing test set forth in Pansy.

### III. Conclusion

Although Defendants failed to follow the proper procedures specified in the Protective Order when they turned over the recording and transcript to Mr. Minnich and the police, the Court will deny Plaintiff's motion for contempt in part because Defendants used the confidential documents to initiate a criminal complaint.   However, because Defendants' have taken inconsistent positions on the application of the Protective Order and the designation of the recording as confidential, the Court will award attorneys' fees in favor of Plaintiff and against Defendants with regard to the time expended in briefing and in argument in Court on the issues discussed in this Memorandum.   Finally, the parties should review all material designated as confidential and use the procedure specified in Paragraph 7 of the Protective Order to resolve any disputes regarding such designations.

An appropriate order follows.

O:\CIVIL 13\13-5101 smith v. unilife corp\13cv5101.memo.11.13.14.mot.contempt.amend.docx