IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TALBOT TODD SMITH | CIVIL ACTION |
| | |
| v. | NO. 13-5101 |
| | |
| UNILIFE CORPORATION, et al. | |

Baylson, J.                                                                                                February 13, 2015

**MEMORANDUM AND ORDER ON ATTORNEY-CLIENT PRIVILEGE ISSUES**

In this contentious "whistleblower" action arising under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, Plaintiff has moved (ECF No. 154) to compel Defendants to produce certain documents identified in privilege logs dated July 7, 2014, and September 26, 2014, which Defendants contend are protected by the attorney-client privilege. The Court concludes the attorney-client privilege applies to these documents and will deny the motion.

**I. Introduction**

Plaintiff, a former employee of Defendant Unilife Corporation, alleges discriminatory and retaliatory termination by Defendants because of Plaintiff's opposition to, and protected disclosures relating to, alleged shareholder fraud and Unilife's failure to comply with certain Food and Drug Administration requirements.

The background of this case has been set forth in prior opinions regarding Plaintiff's amendment of his complaint, Smith v. Unilife Corp., No. 13-5103, 2014 WL 443114 (E.D. Pa. Feb. 4, 2014) (ECF No. 18); Plaintiff's motion for contempt and to amend the Protective Order entered in this case, Smith v. Unilife Corp., No. 13-5101, 2014 WL 6070697 (E.D. Pa. Nov. 13, 2014) (ECF No. 115); Defendants' motion to quash a third party subpoena, Smith v. Unilife Corp., No. 13-5101, 2014 WL 6676738 (E.D. Pa. Nov. 24, 2014) (ECF No. 123); Plaintiff's motion to

dismiss Defendants' counterclaims, Smith v. Unilife Corp., No. 13-5101, 2014 WL 6987893 (E.D. Pa. Dec. 11, 2014) (ECF No. 132); and Defendants' motion for reconsideration of the Court's November 13, 2014, Order regarding Plaintiff's motion for contempt, Smith v. Unilife Corp., No. 13-5101, 2015 WL 115581 (E.D. Pa. Jan. 7, 2015) (ECF No. 143).

There has been extensive discovery in this case with document productions and numerous depositions. In correspondence with the Court and Defendants' counsel, Plaintiff's counsel raised a number of issues concerning Defendants' claim that certain documents listed on Defendants' privilege logs dated July 7, 2014, and September 26, 2014, were subject to the attorney-client privilege and protected from discovery. Defendants agreed to submit copies of the contested documents for *in camera* review by the Court. After reviewing the documents *in camera*, the Court issued an Order on January 16, 2015, requesting additional briefing from the parties (ECF No. 151). On January 26, 2015, Plaintiff filed a motion to compel production of the contested documents (ECF No. 154) and a brief setting forth Plaintiff's arguments that the documents were not privileged and should be produced (ECF No. 155). On February 6, 2015, Defendants filed a brief arguing that the attorney-client privilege attached to the documents and shielded them from production (ECF No. 163).

On February 11, 2015, the Court held a hearing. At the hearing, the Court reviewed the contested documents with counsel and determined that the documents were subject to the attorney-client privilege. Although the hearing transcript will provide a full account of the arguments and Court's rulings, this Memorandum will summarize the issues and holdings and the Court's reasons for denying Plaintiff's motion to compel.

## II. Issues Presented

Defendants submitted two privilege logs, one dated July 7, 2014, and the second dated September 26, 2014, as well as the contested documents for *in camera* review. At the hearing, the Court discussed with counsel items on both privilege logs as to which Plaintiff asserted that the privilege claim was improper.

Most of the documents on the July 7, 2014, privilege log relate to a different litigation pending in a New Jersey court. The parties disagree about the relevance of the New Jersey matter to this case. However, a review of the documents listed on the July 7, 2014, privilege log shows that most of the documents relate to the New Jersey case and are not within the scope of discovery in this case. Many of the documents include correspondence with Defendants' counsel in the New Jersey case and/or counsel's investigators. Plaintiff's name was mentioned in several documents. At the hearing, the Court indicated the context and noted that Plaintiff was entitled to pursue, and in fact had pursued, discovery of certain matters in the New Jersey case, and no rulings were necessary as to Plaintiff's endeavors in this regard.

The items listed on the September 26, 2014, privilege log, relate to communications involving two non-lawyer consultants, Ed Fine and his son Stuart Fine, regarding drafts of Unilife's Fiscal Year 2011 SEC Form 10-K filing. One of the principal issues in this case concerns alleged misrepresentations or omissions in various corporate documents, including Unilife's 2011 SEC Form 10-K, which was ultimately filed with the SEC in September 2011. Plaintiff alleges that Unilife made certain false or misleading claims in its 2011 SEC Form 10-K concerning the shipment of validated and/or commercial product and the extent to which Unilife's production line was installed. The disputed documents include a number of communications sent

by both Messrs. Fine to Unilife CEO Alan Shortall and Unilife in-house counsel Chris Naftzger, generally concerning the contents, style and "wordsmithing" of drafts of the 2011 SEC Form 10-K report.

**A. Functional Equivalent Doctrine**

Defendants rely on the "functional equivalent" doctrine, which holds that an independent consultant may be viewed as an employee for purposes of the attorney-client privilege if the consultant is the "functional equivalent" of an employee. See, e.g., In re Flonase Antitrust Litig., 879 F. Supp. 2d 454, 457-58 (E.D. Pa. 2012). Although the Third Circuit has yet to adopt the "functional equivalent" doctrine,[1] Judge Brody's opinion in Flonase concluded in favor of a broad practical approach to determining whether a consultant is the functional equivalent of an employee. Id. at 460. Judge Brody traced this approach to Upjohn Company v. United States, 449 U.S. 383 (1981), in which the Supreme Court rejected the narrow control group test[2] and endorsed a functional approach to the attorney-client privilege within corporations, taking into account the purpose of the privilege and the realities of large-scale modern corporations. Id. at 457-58 (citing Upjohn, 449 U.S. at 391-92).

Plaintiff relies on In re Bristol-Myers Squibb Securities Litigation, No. 00-1990, 2003 WL 25962198, at *3 (D.N.J. June 25, 2003), which also purports to apply the "functional equivalent" doctrine. In Bristol-Myers, the court applied a four-factor test to uphold the finding of a special master that there was no privilege. In re Bristol-Myers Squibb Securities Litigation, No. 00-1990,

---

[1] Several Courts of Appeal have adopted the functional equivalent doctrine. See United States v. Graf, 610 F.3d 1148, 1158-59 (9th Cir. 2010); Fed. Trade Comm'n v. GlaxoSmithKline, 294 F.3d 141, 147-48 (D.C. Cir. 2002); In re Bieter Co., 16 F.3d 929 (8th Cir. 1994).

[2] The control group test had held that only communications involving corporate officers and agents able to direct the company's actions in response to legal advice—the control group—were covered by the attorney-client privilege. See Upjohn, 449 U.S. at 390-91.

2003 WL 25962198, at *4 (D.N.J. June 25, 2003).   The court considered whether the consultants: (1) were incorporated in the staff to perform a corporate function, *which is necessary in the context of actual or anticipated litigation*; (2) possessed information needed by attorneys in rendering legal advice; (3) possessed authority to make decisions on behalf of the company; and (4) were hired because the company lacked sufficient internal resources and/or adequate prior experience with the consultant's field.   Id. (citations omitted) (italics in original).   The court noted that "[t]he key to deciding if a consultant should be protected under the 'functional equivalent' exception is if the consultant acts for the corporation and possesses the information needed by attorneys in rendering legal advice."   Id.   However, in Flonase Judge Brody held that the court in Bristol-Myers set forth an overly restrictive view of the attorney-client privilege and, by requiring the consultant to possess decision-making authority, resurrected the control group test that the Supreme Court had rejected in Upjohn.   Flonase, 879 F. Supp. 2d at 459.

    At the hearing, this Court indicated agreement with Judge Brody's approach in Flonase and determined that Ed and Stuart Fine were the functional equivalent of employees.  The Bristol-Myers approach imposes an undue burden on corporations in determining how to allocate functions as to which legal advice may be appropriate.   This in itself unduly burdens the right to secure legal advice at the risk of losing the attorney-client privilege.   A trial judge is not in a good position to second-guess a corporate decision to rely on an independent consultant or an employee to accomplish a specific task and/or to make recommendations to the CEO or general counsel.   A review of the documents demonstrated that the communications were with counsel and were made for the purpose of assisting the corporation in securing legal advice or making legal decisions. After hearing argument and considering the briefs, the Court concluded that Defendants' claim of

attorney-client privilege regarding the communications with both Ed and Stuart Fine was proper, and those documents should be protected from disclosure.

**B.  Discovery of Drafts of SEC 10-K Report**

The Court also concluded that the drafts of the 2011 SEC Form 10-K report, at issue in this case, were not discoverable because the review of those drafts would call for disclosure of communications with corporate counsel, and this would invade the attorney-client privilege. Plaintiff's counsel conceded that she could not cite any case in which a federal court compelled production of drafts of SEC Form 10-K reports in discovery.  Defendants' counsel relied on Roth v. Aon Corp., 254 F.R.D. 538 (N.D. Ill. 2009), in which the plaintiff sought production of an email from defendant's CFO to defendant's CEO and general counsel including a draft SEC Form 10-K report.  The Roth court concluded that the email reasonably sought legal advice, noting that the "Form 10-K requires extremely detailed financial, legal and structural information" and that the "determination of what information should be disclosed for compliance is not merely a business operation, but a legal concern."  Roth, 254 F.R.D. at 541.  The court also concluded that since the communications about the draft Form 10-K were subject to the attorney-client privilege, the draft Form 10-K remained privileged even though the final version of the document was publicly filed. Id. ("[M]ost courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact.").  That decision comports with a decision by a court in this district finding that drafts of SEC Form 10-K reports containing legal advice and communications between a law firm and its client were privileged, even though the final version of the Form 10-K was publicly filed, because the drafts contained information not included in the final version.  In re U.S. Healthcare Sec. Litig., No. 88-0559, 1989

6

WL 11068, *4 (E.D. Pa. Feb. 8, 1989).

In light of these cases and Plaintiff's inability to cite a case holding that drafts of Form 10-K reports are discoverable, the Court noted at the hearing that there was no reason in this case to hold that drafts of Unilife's 2011 SEC Form 10-K report, which were the subject of communications with corporate counsel, are discoverable.  Plaintiff has not been barred from pursuing discovery as to the accuracy of the SEC Form 10-K at issue, but that does not mean that detailed and expensive discovery into all drafts of that document is necessary.[3]

The Court also noted that its *in camera* review of the allegedly privileged documents did not reveal that any information showing that Defendants were intentionally omitting or concealing any material facts with an intent to defraud.  The Court emphasized that it was not issuing an overall ruling in this case on the issue of whether Defendants did in fact omit or conceal any material facts, but it was only commenting on the information contained in the documents that had been submitted for *in camera* review as to privilege.

**AND NOW**, this 13th day of February, 2015, for the reasons stated in the foregoing memorandum and on the record at the February 11, 2015, hearing, upon consideration of Plaintiff's Motion to Compel Discovery (ECF 154), and all correspondence, responses, and replies thereto, it is **ORDERED** that the Motion is **DENIED**.

                        **BY THE COURT:**

                        /s/ Michael M. Baylson

                        _____

                        **MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 13\13-5101 smith v. unilife corp\13cv5101.memo.order.privilege.docx

---

[3] In a somewhat analogous situation, Fed. R. Civ. P. 26(b)(4), concerning expert reports, was amended in 2010 to preclude discovery of draft expert reports.